COMMONWEALTH of Pennsylvania, Appellee,

v.

Joy Susanne MACKERT, Appellant.

Superior Court of Pennsylvania.

Submitted May 7, 2001.

Filed July 27, 2001.

M. Susan Ruffner, Pittsburgh, for appellant.

Robert Willig, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

BEFORE JOYCE, MUSMANNO and BECK, JJ.

JOYCE, J.:

¶ 1 Joy Susanne Mackert (Appellant) appeals from the October 28, 1997 judgment of sentence entered by the trial court following a jury trial at which she was found guilty of murder in the third degree[1] and two counts of endangering the welfare of children (EWOC).[2] For the following reasons, we vacate the judgment of sentence and remand for appointment of new counsel and a new trial. The relevant facts and procedural history of this case are as follows.

¶ 2 Appellant lived with her husband, Kyle Mackert, and four small children. Two of the children, S.M., who was four years of age on the day in question, and S.W., who was two years old, were the children of Appellant from previous relationships. A third child, A.M., was the four-month old son of Appellant and Kyle Mackert.[3] The fourth child at the Mackert home was the victim, Amber Mackert (Amber), the twenty-three-month old daughter of Kyle Mackert and Gina Coultier. Kyle Mackert had physical custody of Amber, and Gina Coultier had weekly visits with Amber on Sundays.

¶ 3 It is undisputed that Amber had received documented injuries prior to the

---

**1.** 18 Pa.C.S.A. § 2502(c).

**2.** 18 Pa.C.S.A. § 4304.

**3.** The documents in the certified record contain the children's full names. We have, however, changed the names of the surviving children to initials throughout our discussion. *See generally, Matter of C.A.E.,* 516 Pa. 419, 420 n. 1, 532 A.2d 802, 803 n. 1 (1987) (changing children's names to initials in proceeding involving juveniles).

day in question. However, there was conflicting testimony as to the cause of these injuries.

¶ 4 On the day in question, October 25, 1996, Appellant called Emergency Medical Services (EMS) in West Mifflin and reported that Amber was not breathing. When EMS arrived, Amber was cyanotic, she had no pulse, and she was not breathing. Amber was pronounced dead at Jefferson Hospital despite attempts to revive her.

¶ 5 Gary Tallent, an Allegheny County Police Detective, examined Amber's body at the hospital. He noticed bruises and other markings on her body, and he had photographs taken.

¶ 6 An autopsy performed by Deputy Allegheny County Coroner Dr. Abdulrezak Shakir, revealed numerous scratches and contusions on Amber's body. Upon external examination, Dr. Shakir observed numerous injuries that varied in age. Dr. Shakir opined that some of the injuries were recently inflicted. On internal examination, Dr. Shakir found subcutaneous and subgaleal hemorrhages on both sides of Amber's head that he opined were inflicted recently. The doctor believed these hemorrhages were as a result of blunt force trauma.

¶ 7 On October 26, 1996, Children and Youth Services took custody of A.M., S.W., and S.M. Subsequently, Dr. Raymond Pitetti examined S.W. and S.M. He observed bruising on both children, and he further found that S.W. was small for her age, noting she had lost weight since a prior visit to Children's Hospital, two (2) weeks earlier. On or about November 21, 1996, Appellant was arrested and charged

with one count of criminal homicide and three counts of EWOC.[4]

¶ 8 S.M. was placed in foster care at the home of Ms. Francine Marthens. It was at Ms. Marthens' house in November of 1996, that S.M. made statements to Ms. Marthens referring to Appellant's involvement in Amber's death. Detective James Cvetic interviewed S.M. on December 5, 1996. During this interview S.M. told Detective Cvetic that Appellant abused Amber.

¶ 9 Prior to any testimony at Appellant's trial, which was held August 11–14, 1997, a hearing was held before the Honorable Gerald M. Bigley, on the Commonwealth's motion to admit certain statements pursuant to 42 Pa.C.S.A. § 5985.1.[5] At that hearing, the trial court ruled that S.M., then age five (5), was not competent to testify. The Commonwealth then sought to introduce the statements made to Ms. Marthens and Detective Cvetic, by S.M., regarding Appellant's involvement in Amber's death.

¶ 10 The trial court admitted the hearsay statements, and in doing so relied on 42 Pa.C.S.A. § 5985.1 (as amended December 18, 1996). Appellant's trial counsel, Robert P. Vincler, Esquire, objected to the admission of S.M.'s statements and the application of 42 Pa.C.S.A. § 5985.1. On August 14, 1997, a jury found Appellant guilty of third-degree murder and two counts of EWOC. Appellant was sentenced on October 28, 1997 to a term of seventeen-and-one-half (17½) to forty (40) years' imprisonment for the third-degree murder conviction and to two terms of one (1) to seven (7) years' imprisonment on the EWOC convictions, to run consecutive to

---

4. One count of EWOC, as to A.M., was dismissed.

5. 42 Pa.C.S.A. § 5985.1 provides a limited exception to the hearsay rule for statements made by children under twelve (12) years of age.

the third-degree murder charge and to each other.

¶ 11 Appellant filed a notice of appeal on October 31, 1997, but this Court dismissed the appeal due to her counsel's failure to file a brief in support. On May 20, 1999, the Allegheny Public Defender's Office was appointed to represent Appellant in perfecting her appeal. The Allegheny County Court of Common Pleas granted Appellant's motion to reinstate her appellate rights on June 22, 1999. This timely appeal followed.

¶ 12 As stated above, hearsay statements were admitted over Appellant's objections. In admitting these statements, the trial court relied on 42 Pa.C.S.A. § 5985.1, as amended December 18, 1996. This issue was raised in Appellant's statement of matters complained of on appeal, but the statement did not specifically challenge the retroactive application of the amended statute. With these facts in mind, we will address Appellant's first issue:

> Did the court below err in permitting hearsay statements other than allegations of sexual abuse to be introduced against [Appellant] through the retroactive application of 42 Pa.C.S.[A.] § 5985.1?

Brief for Appellant at 5.

¶ 13 The Commonwealth argues that the issue of retroactive application of 42 Pa.C.S.A. § 5985.1 was waived when Appellant failed to raise it in the statement of matters complained of pursuant to Pa. R.A.P.1925(b). In a reply brief, Appellant counters the Commonwealth's objection by first claiming that if retroactivity was not specifically stated, then appellate counsel was himself ineffective in that he failed to raise the issue of the trial court's retroactive application of 42 Pa.C.S.A. § 5985.1 in the 1925(b) statement.[6] Further support for this argument is found in Appellant's post-submission communication pursuant to Pa.R.A.P. 2501(b) that raises the implications of the recent decision reached by the Pennsylvania Supreme Court in *Commonwealth v. Johnson*, 565 Pa. 51, 771 A.2d 751 (2001).

¶ 14 In *Johnson*, our Supreme Court addressed a claim where appellate counsel claimed her own ineffectiveness, and how that claim related to 1925(b) statements and waiver pursuant to *Lord*.[7] The appellant in *Johnson* claimed that when appellate counsel raised her own ineffectiveness for failing to raise the issue of an inadequate jury waiver colloquy in the statement of matters complained of pursuant to 1925(b), it is an issue that should be addressed by the Superior Court. *Johnson, supra,* at ——, 771 A.2d at 757. Therefore, the issue before our Supreme Court was "whether Appellate Counsel's claim of his or her own ineffectiveness for failure to include a claim of ineffective assistance of counsel within a statement of matters complained of on appeal is a claim that is reviewable by the Superior Court irrespective of *Lord* [.]" *Id.*

---

6. Appellant also claims the issue was not waived because her 1925(b) statement does claim hearsay was admitted in violation of 42 Pa.C.S.A. § 5985.1, and that her 1925(b) statement was concise pursuant to court rules, so that every possible argument was not fully developed. As our decision is based on other grounds we render no opinion as to the merits of Appellant's argument on this claim.

7. *Commonwealth v. Lord,* 553 Pa. 415, 420, 719 A.2d 306, 309 (1998) (in order to preserve claims for appellate review, Appellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to rule 1925. Any issue not raised in a 1925(b) statement will be deemed waived).

¶ 15 The Supreme Court held that such claims must be reviewed by the Superior Court, because the alternative "would result in disparate treatment for appellants who are not provided new counsel to handle their appeal and would discourage conscientious appellate counsel who recognize their own ineffectiveness, from bringing such claims to the court's attention at the first available opportunity." *Id.*

¶ 16 We find the decision of our Supreme Court in *Johnson* to be directly on point. Therefore, we will address Appellant's ineffectiveness claim pursuant to *Johnson, supra.*

¶ 17 "It is well-established that a claim of ineffectiveness must be raised at the earliest possible stage of the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant." *Commonwealth v. Green*, 551 Pa. 88, 92–93, 709 A.2d 382, 384 (1998) (citations omitted). Additionally, the Supreme Court has recognized that, "[a]s a general rule, a public defender may not argue the ineffectiveness of another member of the same public defender's office since appellate counsel, in essence, is deemed to have asserted a claim of his or her own ineffectiveness." *Id.*

¶ 18 In this case, a member of the public defender's office represented Appellant in the filing of the 1925(b) statement and brief for Appellant. A separate member of the public defender's office however, filed the reply brief and post-submission communication pursuant to Pa.R.A.P. 2501(b). Therefore, appellate counsel has alleged his own ineffectiveness. *See id.*

¶ 19 This alone does not preclude appellate review. When counsel alleges his/her own ineffectiveness, our Supreme Court has indicated that the case should be remanded for the appointment of new counsel unless: (1) it is clear from the record that counsel was ineffective; or, (2) where it is clear from the record that the ineffectiveness claim is without merit. *Commonwealth v. McBee*, 513 Pa. 255, 261, 520 A.2d 10, 13 (1986).

¶ 20 Appellant claims that appellate counsel was ineffective in failing to include in the 1925(b) statement the issue of the retroactive application of 42 Pa.C.S.A. § 5985.1. The standard of review on ineffective assistance of counsel claims is well settled:

> The threshold inquiry in effectiveness of counsel claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be ineffective for failing to assert a meritless claim. Once this threshold is met[,] we apply the reasonable basis test to determine whether counsel's chosen course was designed to effectuate his client's interests. If we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective. If we determine that there was no reasonable basis for counsel's chosen course[,] then the accused must demonstrate that counsel's ineffectiveness worked to his prejudice. The burden of establishing counsel's ineffectiveness is on the [defendant] because counsel's stewardship of the trial is presumptively effective.

*Commonwealth v. Wilson*, 543 Pa. 429, 440, 672 A.2d 293, 298 (1996), *cert. denied*, 519 U.S. 951, 117 S.Ct. 364, 136 L.Ed.2d 255 (1996) (citation and quotation marks omitted). To meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a reasonable probability that but for the act or omission in question the outcome of the proceedings would have been different. *Common-*

*wealth v. Wallace*, 555 Pa. 397, 407, 724 A.2d 916, 921 (1999).

¶ 21 It is undisputed that legal proceedings against Appellant began prior to February 16, 1997, which was the effective date of the amended version of 42 Pa. C.S.A. § 5985.1; the trial court applied the amended version when it admitted the hearsay statements.[8] Therefore, we find Appellant's underlying claim regarding retroactivity has arguable merit. We can conceive of no reasonable basis for counsel's course of conduct in failing to raise an issue in a 1925(b) statement, that if raised, would create the very reasonable probability that a different result would have been reached. Hence, Appellant was prejudiced by counsel's conduct. As such, counsel was clearly ineffective, and remand on this issue is not necessary. *See McBee, supra.*[9]

¶ 22 Appellant argues that the statute that was in effect when the proceedings against her began, did not allow for admission of hearsay statements of a child in cases of physical abuse; such hearsay statements were only admissible in cases of sexual abuse.[10] A trial court's

---

8. The amendments to 42 Pa.C.S.A. § 5985.1 were enacted on December 18, 1996, and became effective sixty (60) days thereafter. *See* 42 Pa.C.S.A. § 5985.1, as amended 1996.

9. Because we have determined that appellate counsel was clearly ineffective and that remand on this issue is not necessary, we will, in the interests of judicial economy, address the merits of Appellant's underlying claim of error.

10. The statute, 42 Pa.C.S.A. § 5985.1, prior to the 1996 amendments read:

> (a) General rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, *describing indecent contact, sexual intercourse or deviate sexual intercourse performed with or on the child by another,* not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal proceeding if:
> (1) The court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability.
> (2) The child either:
> (i) testifies at the proceeding; or
> (ii) is unavailable as a witness and there is corroborative evidence of the act.
> (b) Notice required.—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1 (pre–1996 amendments) (emphasis added). After the 1996 amendments, 42 Pa.C.S.A. § 5985.1 read:

> (a) General rule.—An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, *describing physical abuse, indecent contact or any of the offenses enumerated in 18 Pa.C.S. Ch. 31 (relating to sexual offenses) performed with or on the child by another,* not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:
> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and the child either:
> (i) testifies at the proceeding; or
> (ii) is unavailable as a witness.
> (a.1) Emotional distress.—Before the court makes a finding under subsection (a)(2)(ii), the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress such that the child cannot reasonably communicate. In making this determination, the court may do all of the following:
> (1) Observe and question the child victim or child material witness, either inside or outside the courtroom.
> (2) Hear testimony of a parent or custodian or any other person, such as a person

application of a statute is a question of law, and our standard of review is plenary. *See Commonwealth v. Taylor,* 746 A.2d 626 (Pa.Super.2000). Furthermore, as this matter involves only a question of law, our standard of review is limited to a determination of whether the trial court committed an error of law. *See id.* It is black letter law that a statute cannot be applied retroactively absent the legislature's clear intent that retroactivity is appropriate. 1 Pa.C.S.A. § 1926 (no statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly); 1 Pa.C.S.A. § 1953 (whenever a section or part of a statute is amended, the amendment shall be construed as merging into the original statute, become a part thereof, and replace the part amended, and the remainder of the original statute and the amendment shall be read together and viewed as one statute passed at one time; but the portions of the statute which were not altered by the amendment shall be construed as effective from the time of their original enactment, and the new provisions shall be construed as effective only from the date when the amendment became effective).

■ ¶ 23 However, the Commonwealth argues that amended statutes can be applied retroactively, even without the legislative mandate, if the amendments were procedural and not substantive. In support of this argument, the Commonwealth cites *Galant v. Department of Environmental Resources,* 534 Pa. 17, 626 A.2d 496 (1993) (it is well settled that legislation concerning purely procedural matters will be applied not only to litigation commenced after its passage, but also to litigation existing at the time of its passage). The general rule in determining whether a statute should be applied retroactively is as follows: "Legislation which affects rights will not be construed to be retroactive unless it is declared so in the act. But, where it concerns merely the mode of procedure, it is applied, as of course, to litigation existing at the time of its passage." *Commonwealth v. Fisher,* 559 Pa. 558, 572, 741 A.2d 1234, 1241 (*quoting Morabito's Auto Sales v. Dept. of Transportation,* 552 Pa. 291, 715 A.2d 384 (1998) (citation omitted)).

■ ¶ 24 Therefore, the Commonwealth's argument would require this Court to first decide if the amendments to 42 Pa.C.S.A. § 5985.1, which became effective sixty days from its enactment on December 18, 1996, are procedural or substantive. However, we find this analysis to be unnecessary in light of the statutory note that unequivocally announces the effective date of the act. "Section 6 of Act

who has dealt with the child victim or child material witness in a medical or therapeutic setting.

(a.2) Counsel and confrontation.—If the court hears testimony in connection with making a finding under subsection (a)(2)(ii), all of the following apply:

(1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the Commonwealth or, in the case of a civil proceeding, the attorney for the plaintiff has the right to be present.

(2) If the court observes or questions the child, the court shall not permit the defendant to be present.

(b) Notice required.—A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1 (as amended, 1996) (emphasis added).

1996, Dec. 18, P.L. 1077, No. 161 provides that *this act shall apply to actions commenced on or after the effective date of this act.*" 42 Pa.C.S.A. § 5985.1 (as amended, 1996) (Historical and Statutory Notes) (emphasis added). As stated above, there is no dispute that this action commenced prior to the effective date of the act. As such, we hold that the trial court erred in applying the amended statute.

¶ 25 For the reasons set forth above, we are constrained to agree with Appellant that the esteemed trial court committed an error of law. The statute that was in effect at the time the proceedings began was 42 Pa.C.S.A. § 5985.1, prior to the 1996 amendments. As such, any reliance on the amended version was in error. We vacate Appellant's judgment of sentence and remand for appointment of new counsel and new trial.

¶ 26 Although we are of the view that Appellant's first claim entitles her to relief, we must address her second and third challenges that are set forth below. The reason for this further analysis is that these issues present challenges to the sufficiency of the evidence, and a retrial would be precluded in the event these issues have merit. *Commonwealth v. Brachbill,* 520 Pa. 533, 537, 555 A.2d 82, 84 (1989).

 ¶ 27 Appellant's second claim is that the evidence at trial was insufficient to prove the crime of third-degree murder because there was no proof of malice. Appellant's third argument is that the evidence was insufficient to prove the crime of EWOC because there was no evidence of the endangerment of any child. We will address both issues in the order presented.

The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the fact-finder could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Miller,* 426 Pa.Super. 410, 627 A.2d 741, 744 (1993) (internal citations omitted). With this standard in mind, we will proceed with our analysis.

 ¶ 28 To support a third degree murder conviction, the Commonwealth must prove the killing was committed with malice aforethought. *Id.* This Court has defined malice as a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* Additionally, malice may be found where a defendant consciously disregarded an unjustified and extremely high risk that his/her actions might cause serious bodily injury. *Id.*

 ¶ 29 Appellant herself testified that she was the full-time caregiver to Amber and her children, and the only person to enter Amber's bedroom in the hours before her death. We must note, that:

... where an adult is given sole custody of a child of tender years for a period of time, and, during that time the child sustains injuries which may have been caused by a criminal agency, the [jury] may examine any explanation offered and, if they find that explanation to be wanting, they may reject it and find the person having custody of the child responsible for the wounds.

*Commonwealth v. Hart,* 348 Pa.Super. 117, 501 A.2d 675, 678 (1985) (*quoting Commonwealth v. Paquette,* 451 Pa. 250, 301 A.2d 837 (1973) (permitting the inference that injuries inflicted upon a child left in the sole custody of an adult were inflicted by the adult, where the evidence negates accidental or self-inflicted trauma)).

¶ 30 It is evident that the jury, as is their right, rejected Appellant's explanation of the bruises and abrasions on Amber's body and the twenty (20) subcutaneous and subgaleal hemorrhages to Amber's brain as being caused by two-year-old S.W. or from accidents in the home. *See Hart, supra.* Dr. Shakir's uncontradicted testimony evidenced unequivocally that the brain injuries were no more than twenty-four (24) hours old, and could have been inflicted immediately prior to Amber's death.

¶ 31 When we apply the law to the facts, it is clear that the evidence adduced at trial was sufficient to establish malice and sustain a conviction of third-degree murder. Appellant's claim on this issue is without merit.

¶ 32 We now turn our attention to the EWOC convictions. The statute under which Appellant was convicted provides that:

> (a) Offense defined.—A parent, guardian, or other person supervising the welfare of a child under 18 years of age commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

> (b) Grading.—An offense under this section constitutes a misdemeanor of the first degree. However, where there is a course of conduct of endangering the welfare of a child, the offense constitutes a felony of the third degree.

18 Pa.C.S.A. § 4304.

¶ 33 In order to sustain a conviction of this offense the Commonwealth must establish each of the following elements: 1) the accused is aware of his/her duty to protect the child; 2) the accused is aware that the child is in circumstances that could threaten the child's physical or psychological welfare; and 3) the accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare. *Commonwealth v. Pahel,* 456 Pa.Super. 159, 689 A.2d 963, 964 (1997).

¶ 34 In the case at bar, Dr. Pitetti testified as to the physical condition and appearance of S.M. and S.W. He testified that both S.W. and S.M. had dirty hands, feet, toes, and had dirt smeared all over their skin in addition to wearing dirty clothes. In his testimony, Dr. Pitetti noted that both children had numerous bruises on their buttocks, groin, thighs, and backs; injuries inconsistent with normal child play. He further opined that these injuries were inflicted rather than accidental, and that the injuries were inflicted recently. Dr. Pitetti testified to having examined S.W. two weeks prior to the October 26, 1996 examination, and he noticed that the child had lost twenty-percent (20%) of her body weight in that time period. We again note that Appellant herself testified that she was the full-time caregiver. As stated in *Hart, supra,* the jury is free to reject Appellant's explanation of the wounds and find the caregiver responsible for the injuries. Viewing the evidence in a light most favorable to the Commonwealth, we find that the evidence was sufficient to sustain convictions for EWOC and that a jury could reasonably conclude a course of conduct existed that endangered the welfare of S.W. and S.M. As such, we find that Appellant's third claim is without merit.

¶ 35 Therefore, we find no merit to Appellant's sufficiency of the evidence claims. However, we remain obligated to vacate the judgment of sentence and remand for appointment of new counsel and a new trial based upon our determination of Appellant's first claim.

¶ 36 Judgment of sentence vacated. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.